Stephenson, J.
 

 There are but two questions in this case, as we view it:
 

 First, did Tego acquire a vested interest in the moneys on deposit with the building and loan company, by virtue of the joint and survivorship contract?
 

 Second, if he did acquire a vested interest therein, does the law or the public policy of the state of Ohio divest him of such interest?
 

 The rights of Tego are largely determined by Section 9648, General Code:
 

 “To receive money on deposits, and all persons, firms, corporations and courts, their agents, officers and appointees may make such deposits and stock deposits, but such corporation shall not pay interest thereon exceeding the legal rate. When such deposits or stocks deposits are made to the joint account of two or more persons, whether adults or minors, with a
 
 *437
 
 joint order to the corporation that such deposits or any part thereof are to be payable on the order of any one or more of such joint depositors, and to continue to be so payable notwithstanding* the death or incapacity of one or more of the persons making* them, such account shall be payable to any one or more of such survivors or survivor or order notwithstanding such death or incapacity. No recovery shall be had against such corporation for amounts so paid and charged to such account.”
 

 Apostol and Tego complied with this section by executing* the contract provided for therein and delivering* it to the West! Side Building and Loan Company. This was a contract
 
 inter vivos
 
 between the two, carrying a present, vested interest to Tego; and had Section 10503-17, General Code, been in effect at that time, which it was not, it could in no wise have affected his rights.
 

 Counsel seem to attach a great deal of importance to the word “order” as used in Section 9648, General Code. We see nothing in this set-up that ascribes to this- word any unusual or peculiar meaning. By the execution of this joint and survivorship contract, each authorized the West Side Building and Loan Company to pay any and all credits at that time or thereafter on the account to either, both before, after and notwithstanding the death or other incapacity of either of them.
 

 This court inferentially construed this section in the case of the
 
 Cleveland Trust Co.
 
 v.
 
 Scobie, Admr.,
 
 114 Ohio St., 241, 151 N. E., 373, 48 A. L. R., 182; but counsel for plaintiffs in error claim that the record in this case does not meet the requirements in that case, as it is necessary to show that the depositor intended to transfer to the person to whom he made the account jointly payable a present, joint interest therein, equal to his own.
 

 
 *438
 
 There is a written contract in this case and it is presumed to state the intent of the parties thereto, so long as it is clear and unambiguous. We fail to find any ambiguity therein. The contract is clear, its words are plain, and it will not admit of parol testimony to vary its terms.
 

 There is some testimony in the record to the effect that Apostol stated to an officer of the building and loan company that he wanted Tego to have the account in case anything happened to himself. He could have made this expression by way of last will and testament, but he did not see fit to do so. He gave Tego a present, vested interest; and while he attempted, through his friend Jim Nicoloff Pascoff to nullify this contract, it never was accomplished.
 

 The building and loan company must rely upon the contract between Apostol and Tego for its acquittance. Any attempted nullification of the contract by Apostol should be accompanied with the same solemnities as witnessed the creation of the contract. For the building and loan company to recognize anything less would be subjecting it to danger. Apostol gave to Tego by this contract a right in the account as absolute as that of himself. Nothing more could have been done to invest Tego with a complete title.
 

 We have heretofore stated that there is no statutory law in Ohio that deprives Tego of his right to this account. Counsel insist that Tego’s right should be denied him because to allow it would be in contravention of sound public policy and place a premium on murder. We are not subscribing to the righteousness of Tego’s legal status; but this is a court of law and not a theological institution. We have no power to attaint Tego in any way, shape or form. Property cannot be taken from an individual who is legally entitled to it because he violates a public policy. Property rights are too sacred to be subjected to a
 
 *439
 
 danger of that character. We experience no satisfaction in holding that Tego is entitled to this account; but that is the law and we must so find.
 

 The judgment of the Court of Appeals is hereby affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Jones, Matthias, Day and Zimmerman, JJ., concur.